| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------X<br>RONALD ALEXANDER DOBEK,<br>                                   Plaintiff,<br>          -against-<br>CHRISTINA LEANAWEAVER, WARDEN, et al.,<br>                                  Defendants.<br>------------------------------------------------------------X | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #:_____<br>DATE FILED: 08/05/2016<br><br>15 Civ. 7497 (LGS)<br><br>**OPINION AND ORDER** |

LORNA G. SCHOFIELD, District Judge:

Plaintiff Ronald Dobek brings this action pro se against two wardens at the Metropolitan Correctional Center ("MCC") in New York, and two physicians assigned to the MCC, pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Dobek alleges a constitutional violation arising out of deliberate indifference to his medical needs while he was incarcerated at the MCC.[1] Defendants move to dismiss the Amended Complaint (the "Complaint") under Federal Rule of Civil Procedure 12(b)(6). Because it is clear from the face of the Complaint that Plaintiff failed to exhaust the administrative remedies available to him as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e et seq., and because he fails to state a constitutional violation, Defendants' motion is granted.

I.   **BACKGROUND**

For purposes of this motion, the factual allegations pleaded in the Complaint are assumed

---

[1] Dobek characterizes his *Bivens* claims against Defendants Hastings and Leanaweaver as separate claims under the Eighth and Fourteenth Amendments. However, "[a] convicted prisoner's claim of deliberate indifference to his medical needs by those overseeing his care is analyzed under the Eighth Amendment because the right the plaintiff seeks to vindicate arises from the Eighth Amendment's prohibition of 'cruel and unusual punishment.'" *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009). Thus Dobek's *Bivens* claims are considered under the Eighth Amendment analysis.

to be true.

On or about October 21, 2012, after fighting with another inmate, Plaintiff was diagnosed with a fracture to his lower right eye orbital shelf at the MCC and at the New York Downtown Hospital ("NYDH").  Defendants Dr. Anthony Bussanich and Dr. Robert Beaudouin recommended plastic surgery at NYDH to repair the orbital shelf.  Non-party Dr. Rose performed the one-day procedure.  Afterwards, Plaintiff returned to his housing unit in the MCC.

Following the procedure, Plaintiff suffered an infection to his eye area.  Defendant Bussanich diagnosed the infection and prescribed antibiotics.  Although Plaintiff completed the course of antibiotics, his condition worsened, and he scheduled a follow-up appointment.  At the follow-up appointment, Bussanich was concerned that the infection had spread from the right eye to the left eye as well.  He told Plaintiff that he would have an eye consultant look at the infection and would also schedule an external MRI.  Around January or February 2013, Plaintiff met with the eye consultant, who prescribed Plaintiff a different medication.  Following this consultation, Defendants Hastings and Leanaweaver[2] -- the outgoing and incoming wardens respectively -- seemed to expedite his medical visits within the MCC and assured Plaintiff that he would receive treatment.

In or around June 2013, Bussanich said that he was unable to resolve Plaintiff's infection and scheduled him for an out-patient consultation with Plaintiff's surgeon, Dr. Rose, and with another doctor who specialized in ophthalmologic issues.  Dr. Rose determined that it was unlikely that the infection had advanced from the procedure.  The ophthalmologic specialist determined that Plaintiff was suffering from an extreme eye infection and prescribed additional treatment for Plaintiff back at the MCC.  When Plaintiff returned to the MCC, Dr. Bussanich told

---

[2] The original Complaint uses the spelling "Leanaweaver" for Warden Christina Leanaweaver, as do Defendants' briefs, so this spelling is used here.

him that he would place Plaintiff on a medical hold so that he would not be transferred out of the MCC while he finished treatment.

In early July 2013, Plaintiff was prescribed specialized oral and topical medication for inflammation and infection. The specialist also said that if his infection had been properly diagnosed initially, its progression could have been avoided. Plaintiff was placed on a six-month treatment plan to ensure that the infection subsided.

A couple of weeks later, in mid-July 2013, Plaintiff was awakened by Correctional Officer Davis and told to prepare for his departure from the MCC. Plaintiff informed Davis that he was on a medical hold and had pending medical appointments. Davis told Plaintiff to discuss the issue with the staff at Release and Delivery ("R&D"). Plaintiff informed the R&D staff of his medical hold. Thirty minutes later, they confirmed Plaintiff's medical hold but said that he was to be transferred nonetheless. Plaintiff was then transferred to Oklahoma City Detention Center ("OKC").

Upon arrival at OKC, Plaintiff informed the staff of his medical hold status. The OKC staff told him that because OKC is only a transfer site, it was incapable of handling his concerns, and he would need to wait until he was transferred. After another 30 days, Plaintiff was transferred to the Kenosha County Detention Center ("KCDC") in Wisconsin. At KCDC, the staff discarded all of Plaintiff's medication. Plaintiff wrote to Warden Leanaweaver and Dr. Bussanich at the MCC in New York to tell them that he had no medication or treatment plan for his infection, but received no response. He also informed the Federal Board of Prisoners' Northeast Regional Office and received no response. Plaintiff then filed "grievances" within the KCDC facility, which referred him to the Federal Bureau of Prisons (the "FBOP"), and also filed a Standard Form 95 ("SF-95"), which is for a claim under the Federal Tort Claims Act ("FTCA")

against the United States for money damages on account of damage to or loss of property or personal injury or death on account of a negligent or wrongful act by a Government employee.  In March 2015, the FBOP denied his FTCA claim and within six months, he filed this action, seeking $3.5 million in damages for "permanent difficulty focusing within the right eye and color vision problems," as well as "permanent numbness . . . extending down the right side of the face."

## II.   LEGAL STANDARD

### A.   Motion to Dismiss

On a motion to dismiss, a court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citing *Brass v. Am. Film Techs, Inc.,* 987 F.2d 142, 150 (2d Cir.1993)).  A court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party.  *See Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010).  To withstand dismissal, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  Federal Rule of Civil Procedure 8 "requires factual allegations that are sufficient to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012) (alteration in original) (quoting *Twombly*, 550 U.S. at 555).

In construing complaints by plaintiffs proceeding pro se, courts "apply[] a more flexible

standard to evaluate their sufficiency than [they] would when reviewing a complaint submitted by counsel." *Lerman v. Bd. of Elections in City of N.Y.*, 232 F.3d 135, 140 (2d Cir. 2000); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"). Thus, a court is obligated to construe pro se pleadings with "'special solicitude,' interpreting the complaint to raise the 'strongest [claims] that [it] suggest[s].'" *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (alterations in original) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006)).

### B.  Exhaustion

The Complaint is dismissed because it does not adequately allege that Plaintiff exhausted his administrative remedies. Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C.] section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA's 'exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Hill*, 657 F.3d at 124 (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).

"In order to exhaust a claim, prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Johnson v. Rowley*, 569 F.3d 40, 45 (2d Cir. 2009) (per curiam) (internal quotation marks omitted). These rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218. Failure to exhaust is an affirmative defense, and a defendant must establish "that an administrative remedy was

'available' in the sense that a grievance policy or procedure existed and covered the dispute at hand. . . . by reference to a 'legally sufficient source.'" *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 61 (2d Cir. 2015) (internal citation omitted).  "[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216.  Nevertheless, dismissal is appropriate if it is clear from the face of the Complaint that Plaintiff failed to exhaust administrative remedies.  *See id.* at 215-16.

The Supreme Court recently clarified the framework under which courts should assess whether a prisoner has complied with the PLRA exhaustion requirement in *Ross v. Blake*, 136 S. Ct. 1850 (2016).  The Court held that while Section 1997e(a) of the PLRA "contains one significant qualifier: the remedies must indeed be 'available' to the prisoner," "aside from that exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust -- irrespective of any 'special circumstances.'" *Id*. at 1856.  The Second Circuit read Ross to abrogate any aspects of its decisions in *Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004), and *Hemphill*, 380 F.3d 680, 689-91 (2d Cir. 2004), that permitted plaintiffs to file suit in federal court without first exhausting administrative remedies available to them because of special circumstances.  *See Williams v. Correction Officer Priatno*, __ F.3d __, No. 14-4777, 2016 WL 3729383, at *4 (2d Cir. July 12, 2016).  "Indeed, *Ross* largely supplants our *Hemphill* inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." *Id*. (citing *Ross*, 136 S.Ct. at 1858-59).  *Williams* further laid out the three instances from *Ross* when an administrative remedy may be considered "unavailable -- first, "when 'it operates as a simple dead end -- with officers unable or consistently unwilling to provide any relief to aggrieved inmates.' . . . Second, 'an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.' . . . In other words, 'some

mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it.' . . . Third, an administrative remedy may be unavailable 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Williams*, 2016 WL 3729383, at *4 (citing *Ross*, 136 S. Ct. at 1859-60).

## III.    DISCUSSION

### a. Exhaustion

The Federal Bureau of Prison's ("BOP") Administrative Remedy Program, 28 C.F.R. 542.10 et seq., lays out the administrative exhaustion requirements for BOP inmates. As explained in the MCC's Admission and Orientation Manual for pre-trial inmates (of which the Court takes judicial notice), an inmate is first to present an issue informally to a staff member to try and resolve an issue. *See* "Admission and Orientation, A Manual for Pre-Trial Inmates, Metropolitan Correctional Center, New York City," *https://www.bop.gov/locations/institutions/nym/NYM_aohandbook.pdf* at 5; *see also* 28 C.F.R. § 542.13. If the issue is not resolved informally, then the inmate is to file a formal written Request for Administrative Remedy ("BP-9") within 20 days of the occurrence which gave rise to the Complaint. *See id*. An inmate may be granted an extension when the inmate demonstrates a valid reason for delay, which includes "an extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal." 28 C.F.R. § 542.14.

The Complaint shows that Plaintiff failed to exhaust his administrative remedies before commencing this action. The Complaint alleges that Plaintiff could not have filed a BP-9 while at the MCC because his claim for deliberate indifference was not "cognizable" until he was transferred to KCDC despite his medical hold status.[3] Even assuming this to be true -- that

---

[3] Plaintiff's arguments that he falls into the "special circumstances" exception and Defendants' responses are not addressed here in light of the Supreme Court's recent decision in *Ross* and the

7

Plaintiff's claim for deliberate indifference occurred only when he was transferred, and not in the months leading up to his transfer -- Plaintiff still should have filed a BP-9 when he reached KCDC or after he was returned to federal custody.  He did not file a BP-9 at any point, not while at the MCC as his eye infection worsened, nor after he was transferred to KCDC, nor at any time thereafter.

The Complaint's allegations do not satisfy the exhaustion requirement.  The Complaint alleges that Plaintiff filed an SF-95 for a claim under the FTCA, but this form does not satisfy the exhaustion requirements.  *See Warrender v. United States*, No. 09 Civ. 2697, 2011 WL 703927, at *6 n.3 (E.D.N.Y., Feb. 17, 2011) (filing of an SF-95 does not satisfy exhaustion prerequisites for *Bivens* claim).  The Complaint also alleges that Plaintiff "elected to file grievances within the KCDC facility," a state and not a federal facility, and that they referred him to the FBOP.  This allegation is entirely conclusory, without any indication of how many, when and what kind of grievances may have been filed.  In any event, such grievances also do not satisfy the exhaustion requirement.

To excuse his failure to file a BP-9, the Complaint alleges that the "KCDC facility [a county facility] did not possess a FBOP administrative remedy system."  Even assuming that this circumstance prevented Plaintiff from filing a BP-9 (but did not prevent him from filing an SF-95), the relevant regulations provide for extensions so that when he was returned to federal custody he have could filed the appropriate complaint form.  *See* 28 C.F.R. § 542.14(b) (excusing "extended period in-transit" during which inmate is unable to file).  The Complaint does not plead how the prescribed administrative remedy was "unavailable" to Plaintiff in terms that satisfy *Ross*, that it was "opaque" or a "dead end" or affirmatively "thwarted."  136 S. Ct. at

---

Second Circuit's reading that *Ross* "supplant[ed] our *Hemphill* inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." *Williams*, 2016 WL 3729383, at *4 (citing *Ross*, 136 S.Ct. at 1858-59).

1859-62. Defendants' motion to dismiss is granted for failure to exhaust his administrative remedies.

### b. Deliberate Indifference

Even if the exhaustion requirement were excused, the claims in the Complaint fail to state a constitutional violation. An Eighth Amendment claim arising out of inadequate medical care requires a demonstration of "deliberate indifference to [a prisoner's] serious medical needs." *Hill*, 657 F.3d at 122 (quoting *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)). "To state an Eighth Amendment claim, a prisoner must allege two elements, one subjective and one objective." *Harris v. Miller*, 818 F.3d 49, 63 (2d Cir. 2016) (quoting *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015)). "[S]ubjectively, the defendant official [must have] acted with 'a sufficiently culpable state of mind . . . , such as deliberate indifference to inmate health or safety.'" *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quoting *Gaston v. Coughlin,* 249 F.3d 156, 164 (2d Cir. 2001)). "That is, the official must 'know[ ] of and disregard[ ] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Hill*, 657 F.3d at 122 (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). "The objective component requires that 'the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists.'" *Id*. (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted).

The Complaint's allegations do not meet either the subjective or the objective prong of the Eighth Amendment's deliberate indifference analysis. Objectively, Plaintiff's prolonged eye infection, although painful and uncomfortable, does not rise to the level of "death, degeneration, or extreme pain" required to state a claim. Plaintiff also cannot meet the subjective requirement

of deliberate indifference to serious medical needs, since the prison officials did not "know of and disregard" Plaintiff's eye condition.  To the contrary, Plaintiff received treatment from the initial injury in October 2012, through the resulting eye infection from the surgery, until Plaintiff's departure from the MCC in July 2013.  Even taking as true Plaintiff's allegation that his eye specialist told him that if the infection had been "properly diagnosed when it was first discovered" its progression could have been avoided, the subjective prong is not met because the allegations do not amount to reckless indifference.  While it is unfortunate that Plaintiff suffered a prolonged infection after surgery, given Plaintiff's consistent treatment plans, it cannot be reasonably concluded that his infection developed because of a conscious or reckless disregard for his suffering.

In opposition, Plaintiff abandons what is essentially a medical malpractice claim and states: "nor is Dobek arguing the events and treatment events while within the MCC-NYC facility (although thoroughly accounted for to set the backdrop of the claim in the amended complaint); instead and correctly, Dobek's claims are rooted in deliberate indifference and constitutional violations based on an improper transfer contrary to a 'medical hold' . . . ."  This claim, based on wrongful transfer, also does not satisfy either prong of the test for deliberate indifference.  As noted above, the objective prong is not met because Plaintiff did not suffer "death, degeneration, or extreme pain."  *Hill*, 657 F.3d at 122.  The subjective prong is not met because, based on the Complaint, three of the Defendants had nothing to do with Plaintiff's transfer, and the allegations as to the fourth Defendant do not rise to the level of subjective indifference.

The Complaint contains no allegations connecting three of the Defendants to Plaintiff's transfer from the MCC.  The only allegation tying the physician Defendants to the transfer are that Dr. Bussanich issued the medical hold out of concern for Plaintiff's well-being and that Dr.

Beaudouin confirmed to Plaintiff that the medical hold had been established and the prison staff had been properly notified.  Similarly, Warden Hastings, the outgoing warden, had no connection to the transfer as it can be gleaned from the Complaint that she was no longer warden in mid-July when Plaintiff was transferred.  Nothing in the Complaint suggests that any of these three Defendants -- Bussanich, Beaudouin or Hastings -- had anything to do with authorizing or approving Plaintiff's transfer.

Regarding Defendant Warden Leanaweaver, the Complaint does not allege that she was aware of facts from which the inference could be drawn that Plaintiff faced a substantial risk of serious harm if he were transferred nor that she actually drew the inference.  *Id.*  The Complaint alleges that Warden Leanaweaver was aware of Plaintiff's condition and assured him that he would receive treatment, which he apparently did while he was at her facility, the MCC.  The Complaint alleges in a conclusory fashion that that she was "privy and part of Dobek's transfer." These allegations are insufficient to plead a deliberate subjective indifference to Plaintiff's medical needs.  *See Harris v. Bowden*, No. 03 Civ. 1617, 2006 WL 738110, at *2 n.3 (S.D.N.Y. Mar. 23, 2006), *aff'd*, 349 F. App'x 601 (2d Cir. 2009) (stating that even if Plaintiff were transferred despite a medical hold, "[i]t is not at all clear that, even if effectuated, such a transfer would satisfy the two-pronged standard of deliberate indifference set forth in *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996)"); *Hernandez v. Keane*, 341 F.3d 137, 147 (2d Cir. 2003) ("The failure to place a hold on plaintiff, thereby keeping him at [a prison] while surgery was being contemplated, is likewise insufficient to establish deliberate indifference.").

Consequently, the Amended Complaint fails to allege a constitutional violation.

**IV.   CONCLUSION**

Defendants' motion to dismiss is GRANTED and Plaintiff's claims are dismissed.  The

Clerk of Court is directed to close the motion at Docket No. 31 and terminate this case. The Clerk of Court is also directed to mail a copy of this Opinion and Order to the pro se Plaintiff.

SO ORDERED.

Dated: August 5, 2016
New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

12